**Law Office of Jeffrey Silence, PLLC**
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028
(602) 321-1538
js@silencelaw.com

Jeffrey A. Silence (029143)

**RICHARD J. HARRIS LAW OFFICES, P.C.**
4000 Hickory Fairway Dr.
Woodstock, GA 30188
480-708-9111

Richard J. Harris (013859)
rjharrislaw@gmail.com

Attorneys for Plaintiff

# UNTIED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Khanh Nguyen, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | (Demand for Jury Trial) |
| Embry Health of Arizona, LLC; Raymond Embry and Zachary Travis, husband and husband, and JoEllen Embry, | |
| Defendants. | |

Plaintiff Khanh Nguyen files this Complaint and alleges as follows:

**PARTIES JURISDICTION AND VENUE**

1. Plaintiff Khanh Nguyen ("Nguyen") is currently a resident of the State of Nevada, but at all relevant times worked for Embry Health as a hybrid employee working from home and working in Maricopa County, Arizona.

2. Defendant Embry Health of Arizona, LLC ("Embry Health") is an Arizona limited liability corporation whose principal place of business is, and has been at all relevant times, located in Maricopa County, Arizona.

3. This case arises out of the employment relationship between Nguyen and Embry Health, which was partially performed in Maricopa County, Arizona.

4. Defendant Raymond Embry ("Embry") is an individual and resident of Maricopa County, Arizona acting in his official capacity as the Chief Executive Officer of Defendant Embry Health.

5. Defendant Zachary Travis ("Travis") is an individual and resident of Maricopa County, Arizona acting in his official capacity as the President of Defendant Embry Health.

6. JoEllen Embry is an individual and resident of Maricopa County, Arizona. At all relevant times, JoEllen Embry owned a controlling interest in Embry Health. On information and belief, the acts of Embry Health and its agents that give rise to liability were known to and authorized by her.

7. On information and belief, Defendants Raymond Embry and Zachary Travis are and have been husband and husband and, at all relevant times, both were acting for and on behalf of their marital community.

8. Subject matter jurisdiction and venue are proper in this Court.

9. This Court has personal jurisdiction over the Defendants.

**GENERAL ALLEGATIONS**

10. Embry Health is a healthcare company primarily focused on providing COVID-19 testing and vaccines.

11. Nguyen began working for Embry Health as the Chief Information Officer in Phoenix, Arizona on February 7, 2022.

12. Nguyen served as Embry Health's Chief Information Officer until he was terminated on March 14, 2022.

2

13. In the position of CIO, Nguyen was paid an annual base salary of $350,000, together with an expected annual bonus of $105,000, for a total annual compensation of $455,000.

<u>Nguyen's Protected Whistle-Blowing Activities</u>

14. In or around the first week of March 2022, Nguyen met with Embry and Travis and expressed concerns about practices he believed were illegal. He raised those concerns repeatedly from that time until the day of his termination.

15. Specifically, between March 1 and March 14, 2022, Nguyen reported the following illegal conduct:

A. That Embry was requiring employees to submit to Embry-administered COVID-19 testing three times a week.

B. That the 3 times per week mandatory COVID-19 testing was not medically necessary.

C. That excessive testing was being done solely to increase revenues for Embry at the expense of the federal government by submitting claims for the testing to the federal government's Health Resources and Services Administration ("HRSA")

D. That the mandatory testing of employees by Embry violated the Anti-Kickback statutes because it conditioned continuing employment (and thus payment of the employees) on the use of Embry Health's services.

E. That company-issued devices, such as laptops and cell phones, did not have encryption despite holding personal and patient health information on individuals that received COVID-19 testing and vaccines by Embry Health.

F. That after Embry Health employees were terminated or quit, the company devices that contained sensitive personal and patient health information were not retrieved from those former employees.

G. That employees had stolen Embry Health devices that contained personal and patient health information, and Embry Health did not make reasonable efforts to recover its patient health information.

3

1  H. That employees were using Embry Health devices that contained
2 sensitive personal and patient health information for personal use.
3  I. That the cloud-based services that Embry Health used lack
4 encryption necessary to protect personal and patient health information.
5  J. That the company's data, including but not limited to the sensitive
6 personal and patient health information, was vulnerable to ransomware attacks because
7 Embry Health did not have appropriate safeguards.
8  K. That there was no control to regulate which employees of Embry
9 Health could access the sensitive personal and patient health information.
10  L. That Embry Health had failed to provide effective training on HIPAA
11 compliance, despite legal requirements to do so.
12  16. In response, Embry and Travis told Nguyen that they were already aware of
13 the HIPAA-protected data security problems and agreed that his concerns were legitimate.
14  17. Embry's director of Human Resources, John Barbosa, confirmed to Nguyen
15 that he, too, was concerned about the legality of Embry Health submitting claims to the
16 federal government for payment for the mandatory testing of employees.
17  18. Embry told Nguyen that Embry was working on addressing these concerns.
18  19. On information and belief, Embry was not working on addressing these
19 concerns because Embry was not making any efforts to address any of Embry's many legal
20 violations.
21  20. Embry Health ignored Nguyen's reports that it had submitted false claims
22 to HRSA.
23  21. During the remainder of his employment with Embry Health, Nguyen raised
24 these concerns in at least five phone calls with the executive team, which included Embry
25 and Travis.
26  22. Nguyen recommended that Embry Health hire a reputable accredited auditor
27 to fully audit Embry's compliance. Embry refused that request.
28

4

23. Upon information and belief, Embry Health made representations to HRSA falsely certifying that it was in full compliance with all federal laws and regulations when participating in the reimbursement program for COVID-19 testing.

24. Such certifications were false because, among other things, the testing was not medically necessary.

25. Embry Health's in-house, mandatory employee COVID-19 testing requirement was also a violation of the Anti-Kickback Statute because Embry Health employees were coerced to continue taking Embry Health's COVID-19 tests in order to maintain their employment. 42 U.S.C. § 1320a-7b(b).

26. For these same reasons, the mandatory testing was a violation of the Eliminating Kickbacks in Recovery Act (EKRA) 18 U.S.C. § 220 and Arizona's criminal kickback statute (A.R.S. § 13-3713).

27. The practice is also a violation of A.R.S. § 23-202 (prohibiting employer from requiring that an employee, directly or indirectly, pay a "a fee, commission or gratuity of any kind as the price or condition of the employment.").

28. Embry Health violated A.R.S. § 12-2291 through -2297 by failing to maintain confidentiality of patient records.

29. Embry Health's employee COVID-19 testing requirement was a violation of A.R.S. § 13-2310 because Embry Health was attempting to defraud the federal government by (i) coercing employee into mandatory testing using Embry Health's testing program, (ii) violating patient self-referral laws, and (iii) certifying to the Arizona and federal governments that Embry Health was in full compliance with all Arizona and federal laws that require businesses to take reasonable steps to safeguard personal and health information, and (iv) certifying to the Arizona and federal governments that Embry Health was in full compliance with all Arizona and federal laws requiring businesses to notify all individuals that may be effected by any security incident that concerns their personal or health information.

5

30. Upon information and belief, Embry Health continues to engage in a pattern and practice of unlawful conduct as described above.

31. Nguyen had several discussions with other employees at Embry who shared his concerns about the above-described legal violations, each of whom may be called as a witness.

32. Embry Health's leadership never took any action to address any of the above-described legal violations.

33. On March 14, 2022, Nguyen again raised concerns about the company financials and the importance of auditing the healthcare submissions and rectifying past discrepancies including the fraudulent claims to the federal government.

34. Embry lost his temper after Nguyen raised these concerns.

35. Within ten minutes of Nguyen reporting his concerns, he was terminated.

36. All other employees that were present for that meeting, either in person or on the phone, immediately left after seeing Embry's visceral and emotional reaction.

37. Approximately ten minutes later, Embry Health's Chief of Staff, Veronica Rivera and the Director of Human Resources, John Barbosa, met with Nguyen.

38. Rivera terminated Nguyen, saying that his employment, "was not working out."

39. When Nguyen asked for further explanation, he was not provided any.

40. On information and belief, Rivera and Barbosa were following the directions of Embry and Travis when they terminated Nguyen.

41. Upon information and belief, JoEllen Embry joined in the decision to terminate Nguyen.

## COUNT ONE

### RETALIATION UNDER THE FALSE CLAIMS ACT
### (Against Embry Health of Arizona, LLC)

42. The allegations in the foregoing paragraphs are incorporated by reference.

6

43. The False Claims Act, 31 U.S.C. §§ 3729, *et seq*. states "Any person who (A) knowing presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . . is liable to the United States Government . . . ."

44. The FCA also contains whistleblower provisions that protect employees who make internal or external reports that their employer obtained federal funds under false pretenses. Specifically, it is unlawful for an employer to "discharge[], demote[], suspend[], threaten[], harass[], or in any other manner discriminate[] against [an employee] in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h).

45. Pursuant to the anti-retaliation provisions of the FCA, any report of what is reasonably believed to be illegal conduct arising under the FCA by an entity to a member of the entity's management is protected activity.

46. As set forth above, Nguyen engaged in what Embry knew to be protected activity by repeatedly having raised concerns about how Embry Health was knowingly violating requirements for payment from a Federal Health Care Program – the HRSA.

47. Embry Health receives funding from HSRA based on federal claims it submitted.

48. To qualify for receipt of such money, Embry Health certified to the U.S. Government that claims comply with federal laws and regulations pertaining to payment.

49. Embry Health committed fraud against the U.S. Government by falsely certifying that its claims complied with the laws and regulations governing payment.

50. Embry Health knew Nguyen engaged in protected activity by reporting the false claims violations he did.

51. Nguyen reasonably believed that the above-described complaints concerned acts committed by Embry Health that are unlawful under the False Claims Act.

7

52. Nguyen was subjected to discrimination and retaliation for reporting actions that he reasonably believed violated the False Claims Act by Embry suddenly terminating him on March 14, 2022, without cause or justification, minutes after yet again raising the same concerns that he had repeatedly raised throughout his employment.

53. Embry Health is directly and/or vicariously liable for the unlawful actions of its owners, managers, employees, and agents.

54. As a direct and proximate result of Embry's unlawful retaliation, Nguyen has suffered damages that include, without limitation, back pay and interest thereon, front pay, lost career and career advancement opportunities, mental anguish, emotional distress, pain and suffering, humiliation, harm to reputation, loss of enjoyment of life, and attorney fees and costs.

Nguyen seeks judgment against Defendants Embry Health, as follows:

    A. For reinstatement; make-whole damages including two times back-pay, interest on back-pay, compensation for special damages (in the event of default, an amount not less than $910,000.00); and

    B. For an award of his attorney fees and costs pursuant to 31 U.S.C. § 3730(h); and

    C. For other relief as this Court deems just and proper.

**COUNT TWO**
**UNLAWFUL TERMINATION IN VIOLATION OF A.R.S. § 23-1501**
**(Against all Defendants)**

55. The allegations in the foregoing paragraphs are incorporated by reference.

56. The Arizona Employment Protection Act, A.R.S. §23-1501(A)(3)(c)(ii), provides that it is unlawful to terminate an employee who discloses to management or a governmental agency that he believes the employer has violated or will violate an Arizona statute or the Constitution of Arizona.

57. Nguyen "blew the whistle" on Embry Health's in violation of the Arizona laws set forth above including Arizona laws prohibiting fraud against any person or entity

1 including federal healthcare programs, (A.R.S. § 13-2310); Arizona's laws against kickbacks (A.R.S. § 13-3713); and Arizona's data security laws including A.R.S. § 18-552 (requiring that businesses notify effected individuals whenever they suspect that there has been a "security incident" that involves their personal information and requiring businesses to take reasonable steps to safeguard such information).

58. Nguyen was subjected to retaliation for doing so by, without limitation, being terminated on March 14, 2022, without cause or justification.

59. Embry Health is directly and/or vicariously liable for the unlawful actions of its owners, managers, employees, and agents.

60. An employee may pursue a whistleblower claim against both the employer and the person(s) who were involved in the decision to terminate him.

61. On information and belief, Embry, Travis, and JoEllen Embry made the decision to terminate Nguyen. Each was present for the final meeting immediately before Nguyen was terminated.

62. As a direct and proximate result of Embry's unlawful retaliation, Nguyen has suffered damages that include, without limitation, back pay and front pay, lost wages and interest thereon, lost career and career advancement opportunities, mental anguish, emotional distress, pain and suffering, humiliation, harm to reputation, loss of enjoyment of life, and attorney fees and costs.

63. Embry Health's actions described above demonstrate an evil mind in that such conduct was willful, malicious, and performed with the intent to harm Nguyen or with a conscious disregard of the likelihood of harming him, and he is therefore entitled to an award of substantial punitive damages.

Nguyen seeks judgment against all Defendants as follows:

    A. For his compensatory damages in an amount to be proved at trial including without limitation lost wages and damages for emotional distress (in the event of default, an amount not less than $910,000.00);

    B. For front pay;

Law Office of Jeffrey Silence, PLLC
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

    C.    For an award of punitive damages;

    D.    For costs; and

    E.    For other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Nguyen demands a jury trial on all claims and issues set forth herein.

RESPECTFULLY SUBMITTED this 9th day of March 2023.

**Law Office of Jeffrey Silence, PLLC**

/s/ Jeffrey Silence
Jeffrey A. Silence
Attorney for Plaintiff