**Law Office of Jeffrey Silence, PLLC**
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028
(602) 321-1538

Jeffrey A. Silence (029143)
js@silencelaw.com

**RICHARD J. HARRIS LAW OFFICES, P.C.**
4000 Hickory Fairway Dr.
Woodstock, GA 30188
480-708-9111

Richard J. Harris (013859)
rjharrislaw@gmail.com

Attorneys for Plaintiff

# UNTIED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Khanh Nguyen,<br><br>            Plaintiff,<br><br>v.<br><br>Apollo Healthcare & Diagnostics, LLC; Embry Health of Arizona, LLC; Raymond Embry and Zachary Travis, husband and husband, and JoEllen Embry,<br><br>            Defendants. | Case No. 2:23-cv-00422-SMB<br><br>**FIRST AMENDED COMPLAINT**<br><br>(Demand for Jury Trial) |

Plaintiff Khanh Nguyen files this Complaint and alleges as follows:

## PARTIES JURISDICTION AND VENUE

1. Plaintiff Khanh Nguyen ("Nguyen") is currently a resident of the State of Nevada, but at all relevant times worked for Embry Health and or Apollo Healthcare as a hybrid employee working from home and working in Maricopa County, Arizona.

2. Defendant Embry Health of Arizona, LLC ("Embry Health") is an Arizona limited liability corporation whose principal place of business is, and has been at all relevant times, located in Maricopa County, Arizona.

3. Defendant Apollo Healthcare & Diagnostics, LLC ("Apollo Healthcare") is an Arizona limited liability corporation whose principal place of business is, and has been at all relevant times, located in Maricopa County, Arizona.

4. The original complaint is amended to add Apollo Healthcare because counsel for Defendants represented that Plaintiff was employed by Apollo Healthcare rather than by Embry Health.

5. This case arises out of the employment relationship between Nguyen and Embry Health and/or Apollo Healthcare, which was partially performed in Maricopa County, Arizona.

6. Defendant Raymond Embry ("Embry") is an individual and resident of Maricopa County, Arizona who, at all times relevant, was acting in his official capacity as a managing member and Chief Executive Officer of Defendants Embry Health and Apollo Healthcare.

7. Defendant Zachary Travis ("Travis") is an individual and resident of Maricopa County, Arizona who, at all times relevant, was acting in his official capacity as a managing member and President of Defendants Embry Health and Apollo Healthcare.

8. JoEllen Embry is an individual and resident of Maricopa County, Arizona. At all relevant times, JoEllen Embry was a managing member in Embry Health. On information and belief, the acts of Embry Health and Apollo Healthcare and its agents that give rise to liability were known to and authorized by her.

9. On information and belief, Defendants Raymond Embry and Zachary Travis are and have been husband and husband and, at all relevant times, both were acting for and on behalf of their marital community.

10. Subject matter jurisdiction and venue are proper in this Court.

11. This Court has personal jurisdiction over the Defendants.

## GENERAL ALLEGATIONS

12. Embry Health is a healthcare company primarily focused on providing COVID-19 testing and vaccines.

13. Apollo Healthcare is also a healthcare company primarily focused on providing COVID-19 testing and vaccines.

14. Nguyen began working for Embry Health and/or Apollo Healthcare as their Chief Information Officer in Phoenix, Arizona on February 7, 2022.

15. Nguyen served as Chief Information Officer for Embry Health and/or Apollo Healthcare until he was terminated on March 14, 2022.

16. In the position of CIO, Embry Health and/or Apollo Healthcare paid Nguyen an annual base salary of $350,000, together with an expected annual bonus of $105,000, for a total annual compensation of $455,000.

<u>Embry Health and/or Apollo Healthcare are Co-Employers and/or Alter Egos</u>

17. Embry Health and Apollo Healthcare operated as co-employers of Nguyen with the same management.

18. Nguyen's offer letter supports the inference that both Embry Health and Apollo Healthcare are his employer.

19. There is an alter ego relationship between Embry Health and Apollo Healthcare that supports holding each entity liable for the actions of the other.

20. The affairs of Embry Health and Apollo Healthcare are organized and controlled such that they are each merely instruments, agents, conduits, or adjuncts of each other.

21. The sole member listed on the Arizona Corporation Commission's website for Embry Health is Embry Holdings, LLC.

22. However, Embry Holdings, LLC does not exist.

23. Embry, Travis, JoEllen Embry, and Embry Health are the actual members/managers and owners/operators of Embry Health.

24. There is a unity of interest and ownership among Embry Health and Apollo Healthcare such that the separate identities of each no longer exist and are merged. The entities form a single enterprise with a unity of interest.

25. The entities commingle funds and have inadequate capitalization and funding.

26. The officers/directors of each entity are the same, and they each share offices and employees.

27. Inequitable results will follow if the corporate separateness of each entity is respected.

28. Upon information and belief, the two entities were formed to create confusion and attempt to avoid liability for the actions of the other.

29. For these reasons, the corporate veil should be pierced between Embry Health and Apollo Healthcare, meaning that Embry Health is liable for the actions of Apollo Healthcare and Apollo Healthcare is liable for the actions of Embry Health.

<u>Embry Health and Apollo Healthcare are Alter Egos of Embry, Travis, JoEllen Embry, Including the Marital Community of Travis and Embry</u>

30. As set forth above, Embry Health and Apollo Healthcare are alter egos of each other.

31. In addition, Embry Health and Apollo Healthcare are alter egos of Embry, Travis, and/or the Marital Community of Travis and Embry.

32. The sole member listed on the Arizona Corporation Commission's website for Embry Health is Embry Holdings, LLC.

33. However, Embry Holdings, LLC does not exist. Embry, Travis, JoEllen Embry, and Embry Health are the actual members/managers and owners/operators of Embry Health.

34. Embry Health and Apollo Healthcare failed to keep corporate and individual funds and other assets separate.

4

Law Office of Jeffrey Silence, PLLC
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

1  35. Embry Health and Apollo Healthcare used corporate funds or assets for individual (non-corporate) purposes.

3  36. Embry Health and Apollo Healthcare transferred corporate funds or assets to avoid corporate debts.

5  37. Embry Health and Apollo Healthcare failed to adequately capitalize to ensure they have sufficient assets to meet corporate debts.

7  38. Embry and Travis agreed to be personally responsible for the debts of Embry Health and Apollo Healthcare.

9  39. Embry Health and Apollo Healthcare failed to follow required formalities.

<u>Nguyen's Protected Whistle-Blowing Activities</u>

11  40. In or around the first week of March 2022, Nguyen met with Embry and Travis and expressed concerns about practices he believed were illegal. He raised those concerns repeatedly from that time until the day of his termination.

14  41. Specifically, between March 1 and March 14, 2022, Nguyen reported the following illegal conduct:

A. That Embry, Travis, and/or JoEllen Embry were requiring all employees to submit to Embry Health-administered COVID-19 testing three times a week.

B. That the 3 times per week mandatory COVID-19 testing was not medically necessary.

C. That excessive testing was being done solely to increase revenues for Embry at the expense of the federal government by submitting claims for the testing to the federal government's Health Resources and Services Administration ("HRSA")

D. That the mandatory testing of employees violated the Anti-Kickback statutes because it conditioned continuing employment (and thus payment of the employees) on the use of Embry Health's services.

E. That company-issued devices, such as laptops and cell phones, did not have encryption despite holding personal and patient health information on individuals that received COVID-19 testing and vaccines.

5

  F. That after employees were terminated or quit, the company devices that contained sensitive personal and patient health information were not retrieved from those former employees.

  G. That employees had stolen devices that contained personal and patient health information, and Defendants did not make reasonable efforts to recover its patient health information.

  H. That employees were using devices that contained sensitive personal and patient health information for personal use.

  I. That the cloud-based services lacked encryption necessary to protect personal and patient health information.

  J. That patient data, including but not limited to the sensitive personal and patient health information, was vulnerable to ransomware attacks due to lack of appropriate safeguards.

  K. That there was no control to regulate which employees could access the sensitive personal and patient health information.

  L. Employees were not provided effective training on HIPAA compliance, despite legal requirements for them to get such training.

42. In response, Embry and Travis told Nguyen that they were already aware of the HIPAA-protected data security problems and agreed that his concerns were legitimate.

43. The director of Human Resources for Embry Health and Apollo Healthcare, John Barbosa, confirmed to Nguyen that he, too, was concerned about the legality of Embry Health submitting claims to the federal government for payment for the mandatory testing of employees.

44. Embry told Nguyen that Embry Health was working on addressing these concerns.

45. On information and belief, Embry Health and/or Apollo Healthcare were not working on addressing these concerns because Nguyen observed that Embry, Travis and

6

JoEllen Embry, nor any other Embry Health and/or Apollo Healthcare representative, was making any efforts to address any of the many legal violations.

46. Neither Embry Health nor Apollo Healthcare addressed Nguyen's reports that Embry Health had submitted false claims to HRSA.

47. During the remainder of his employment with Embry Health and/or Apollo Healthcare, Nguyen raised these concerns in at least five phone calls, each of which had one or more members of the executive team, which includes Embry, Travis, and JoEllen.

48. Nguyen recommended that Embry Health hire a reputable accredited auditor to fully audit compliance. Embry refused that request.

49. Upon information and belief, Embry Health made representations to HRSA falsely certifying that it was in full compliance with all federal laws and regulations when participating in the reimbursement program for COVID-19 testing.

50. Such certifications were false because, among other things, the testing was not medically necessary.

51. The in-house, mandatory employee COVID-19 testing requirement for Embry Health and/or Apollo Healthcare employees was also a violation of the Anti-Kickback Statute because employees were coerced to continue taking Embry Health's COVID-19 to maintain their employment. 42 U.S.C. § 1320a-7b(b).

52. For these same reasons, the mandatory testing was a violation of the Eliminating Kickbacks in Recovery Act (EKRA) 18 U.S.C. § 220 and Arizona's criminal kickback statute (A.R.S. § 13-3713).

53. The practice is also a violation of A.R.S. § 23-202 (prohibiting employer from requiring that an employee, directly or indirectly, pay a "a fee, commission or gratuity of any kind as the price or condition of the employment.").

54. Embry Health and Apollo Healthcare violated A.R.S. § 12-2291 through -2297 by failing to maintain confidentiality of patient records.

55. The referenced employee COVID-19 testing requirement was a violation of A.R.S. § 13-2310 because Embry Health and Apollo Healthcare were attempting to

7

defraud the federal government by (i) coercing employee into mandatory testing using Embry Health's testing program, (ii) violating patient self-referral laws, and (iii) certifying to the Arizona and federal governments that Embry Health was in full compliance with all Arizona and federal laws that require businesses to take reasonable steps to safeguard personal and health information, and (iv) certifying to the Arizona and federal governments that Embry Health and Apollo Healthcare were in full compliance with all Arizona and federal laws requiring businesses to notify all individuals that may be effected by any security incident that concerns their personal or health information.

56. Upon information and belief, Embry Health and Apollo Healthcare continue to engage in a pattern and practice of unlawful conduct as described above.

57. Nguyen had several discussions with other employees who shared his concerns about the above-described legal violations, each of whom may be called as a witness.

58. The leadership of Embry Health and Apollo Healthcare never took any action to address any of the above-described legal violations.

59. On March 14, 2022, Nguyen again raised concerns about company financials and the importance of auditing the healthcare submissions and rectifying past discrepancies including the fraudulent claims to the federal government.

60. Embry lost his temper after Nguyen raised these concerns.

61. Within ten minutes of Nguyen reporting his concerns, he was terminated.

62. All other employees that were present for that meeting, either in person or on the phone, immediately left after seeing Embry's visceral and emotional reaction.

63. Approximately ten minutes later, Embry Health's Chief of Staff, Veronica Rivera and the Director of Human Resources, John Barbosa, met with Nguyen.

64. Rivera terminated Nguyen, saying that his employment, "was not working out."

65. When Nguyen asked for further explanation, he was not provided any.

Law Office of Jeffrey Silence, PLLC
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

66. On information and belief, Rivera and Barbosa were following the directions of Embry, Travis, and JoEllen Embry when they terminated Nguyen.

67. On information and belief, Rivera and Barbosa were acting on behalf of Apollo Healthcare as well as on behalf of Embry Health, Embry, Travis and JoEllen Embry.

## COUNT ONE

## RETALIATION UNDER THE FALSE CLAIMS ACT
## (Against All Defendants)

68. The allegations in the foregoing paragraphs are incorporated by reference.

69. The False Claims Act, 31 U.S.C. §§ 3729, *et seq*. states "Any person who (A) knowing presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . . is liable to the United States Government . . . ."

70. The FCA also contains whistleblower provisions that protect employees who make internal or external reports that their employer obtained federal funds under false pretenses. Specifically, it is unlawful for an employer to "discharge[], demote[], suspend[], threaten[], harass[], or in any other manner discriminate[] against [an employee] in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h).

71. Pursuant to the anti-retaliation provisions of the FCA, any report of what is reasonably believed to be illegal conduct arising under the FCA by an entity to a member of the entity's management is protected activity.

72. As set forth above, Nguyen engaged in what Embry, Travis, and JoEllen knew to be protected activity by repeatedly having raised concerns about how Embry Health and/or Apollo Healthcare were knowingly violating requirements for payment from a Federal Health Care Program – the HRSA.

Law Office of Jeffrey Silence, PLLC
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

73. Embry Health and Apollo Healthcare receives funding from HSRA based on federal claims it submitted.

74. To qualify for receipt of such money, Embry Health and Apollo Healthcare certified to the U.S. Government that claims comply with federal laws and regulations pertaining to payment.

75. Embry Health and Apollo Healthcare committed fraud against the U.S. Government by falsely certifying that its claims complied with the laws and regulations governing payment.

76. Embry Health and Apollo Healthcare knew Nguyen engaged in protected activity by reporting the false claims violations he did.

77. Nguyen reasonably believed that the above-described complaints concerned acts committed by Embry Health and Apollo Healthcare that are unlawful under the False Claims Act.

78. Nguyen was subjected to discrimination and retaliation for reporting actions that he reasonably believed violated the False Claims Act by Embry Health and/or Apollo Healthcare suddenly terminating him on March 14, 2022, without cause or justification, minutes after Nguyen yet again raised the same concerns that he had repeatedly raised throughout his employment.

79. Embry Health and/or Apollo Healthcare are directly and/or vicariously liable for the unlawful actions of its owners, managers, employees, and agents.

80. Embry, Travis, and JoEllen are personally liable for the actions of Embry Health and Apollo Healthcare under the alter ego doctrine as detailed above.

81. As a direct and proximate result of Defendants' unlawful retaliation, Nguyen has suffered damages that include, without limitation, back pay and interest thereon, front pay, lost career and career advancement opportunities, mental anguish, emotional distress, pain and suffering, humiliation, harm to reputation, loss of enjoyment of life, and attorney fees and costs.

Nguyen seeks judgment against Defendants as follows:

   A. For reinstatement of employment; make-whole damages including two times back-pay, interest on back-pay, compensation for special damages (in the event of default, an amount not less than $910,000.00); and

   B. For an award of his attorney fees and costs pursuant to 31 U.S.C. § 3730(h); and

   C. For other relief as this Court deems just and proper.

## COUNT TWO
## UNLAWFUL TERMINATION IN VIOLATION OF A.R.S. § 23-1501
**(Against all Defendants)**

82. The allegations in the foregoing paragraphs are incorporated by reference.

83. The Arizona Employment Protection Act, A.R.S. §23-1501(A)(3)(c)(ii), provides that it is unlawful to terminate an employee who discloses to management or a governmental agency that he believes the employer has violated or will violate an Arizona statute or the Constitution of Arizona.

84. Nguyen "blew the whistle" on Embry Health's in violation of the Arizona laws set forth above including Arizona laws prohibiting fraud against any person or entity including federal healthcare programs, (A.R.S. § 13-2310); Arizona's laws against kickbacks (A.R.S. § 13-3713); and Arizona's data security laws including A.R.S. § 18-552 (requiring that businesses notify effected individuals whenever they suspect that there has been a "security incident" that involves their personal information and requiring businesses to take reasonable steps to safeguard such information).

85. Nguyen was subjected to retaliation for doing so by, without limitation, being terminated on March 14, 2022, without cause or justification.

86. Embry Health and/or Apollo Healthcare are directly and/or vicariously liable for the unlawful actions of its owners, managers, employees, and agents.

87. An employee may pursue a whistleblower claim against both the employer and the person(s) who were involved in the decision to terminate him.

Law Office of Jeffrey Silence, PLLC
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

88. On information and belief, Embry, Travis, and JoEllen Embry made the decision to terminate Nguyen.

89. Each was present for the final meeting immediately before Nguyen was terminated.

90. Nguyen has personally observed Embry, Travis, and JoEllen Embry jointly discuss and make key decisions impacting Embry Health and Apollo Healthcare.

91. Nguyen was a key employee, and Embry, Travis, and JoEllen Embry would have very likely been involved in the decision to terminate him.

92. As a direct and proximate result of all Defendants' unlawful retaliation, Nguyen has suffered damages that include, without limitation, back pay and front pay, lost wages and interest thereon, lost career and career advancement opportunities, mental anguish, emotional distress, pain and suffering, humiliation, harm to reputation, loss of enjoyment of life, and attorney fees and costs.

93. The actions of Defendants Embry, Travis, JoEllen Embry, Embry Health and Apollo Healthcare described above demonstrate an evil mind in that such conduct was willful, malicious, and performed with the intent to harm Nguyen or with a conscious disregard of the likelihood of harming him, and he is therefore entitled to an award of substantial punitive damages.

Nguyen seeks judgment against all Defendants as follows:

    A. For his compensatory damages in an amount to be proved at trial including without limitation lost wages and damages for emotional distress (in the event of default, an amount not less than $910,000.00);

    B. For front pay;

    C. For an award of punitive damages;

    D. For costs; and

    E. For other relief as this Court deems just and proper.

## **JURY TRIAL DEMAND**

Nguyen demands a jury trial on all claims and issues set forth herein.

RESPECTFULLY SUBMITTED this 5th day of June 2023.

**Law Office of Jeffrey Silence, PLLC**

/s/ Richard Harris
Richard Harris
Co-Counsel for Plaintiff