**Silence Law Group, PLLC**
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028
(602) 321-1538

Jeffrey A. Silence (029143)
jeff@silencelaw.com
David A. Nowakowski (035068)
david@silencelaw.com

**RICHARD J. HARRIS LAW OFFICES, P.C.**
4000 Hickory Fairway Dr.
Woodstock, GA 30188
480-708-9111

Richard J. Harris (013859)
rjharrislaw@gmail.com

Attorneys for Plaintiff

# UNTIED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Khanh Nguyen, | Case No. 2:23-cv-00422-SMB |
| Plaintiff, | **RENEWED AND AMENDED MOTION FOR ENTRY OF DEFAULT JUDGMENT** |
| v. | |
| Apollo Healthcare & Diagnostics, LLC; Embry Health of Arizona, LLC; Raymond Embry and Zachary Travis, husband and husband, and JoEllen Embry, | |
| Defendants. | |

Khanh Nguyen ("Plaintiff") was an employee of Apollo Healthcare & Diagnostics, LLC ("Apollo") and Embry Health of Arizona, LLC ("Embry"), working directly for

Raymond Embry, Zachary Travis, and JoEllen Embry (all collectively "Defendants"). While employed, Plaintiff saw actions that he believed violated both state and federal law and informed his employers of his concerns. Plaintiff did what we expect every employee to do in this situation. And in retaliation, Defendants fired him. Now after months of litigation, Defendants have abandoned their defense.

Plaintiff respectfully requests this Court grant this Renewed Motion for Entry of Default Judgment and enter a damages judgment or refer the case to a magistrate judge for evidentiary hearing to determine damages pursuant to Fed. R. Civ. P. 55(b)(2)(B). Per the Court's most recent Order, this renewed motion contains an affidavit from Plaintiff establishing what damages he is seeking and explaining why they are justified.

**I.     Facts**

Plaintiff started working for Embry and Apollo, as the Chief Information Officer, starting on February 7, 2022. [Doc. 17 at ¶ 14]. As part of his employment, Apollo and Embry paid Plaintiff an annual salary of $350,000 and an annual bonus of $105,000, for a total compensation package of $455,000.00. [*Id.* at ¶ 16]. Embry and Apollo were primarily a healthcare company focused on providing vaccines and tests for COVID-19. [*Id.* at ¶¶ 12-13].

Shorly after starting his employment, Plaintiff met with Defendants and informed them that he believed Defendants were engaging in activity that may be illegal. [*Id.* at ¶ 40]. Specifically, Plaintiff informed Defendants that he believed Apollo and Embry were submitting fraudulent tests to the federal government for reimbursement and were mishandling protected patient data, in violation of Arizona and federal law. [*Id.* at ¶¶ 41, 49, 50, 51, 52, 53, 54, 55].

In response, Defendants acknowledged some of the issues were valid and claimed they would investigate and address the concerns. [*Id.* at ¶¶ 42-43]. But that was a lie. Defendants did not make any efforts to correct any issues. [*Id.* at ¶ 45].

Plaintiff continued to raise these issues with Defendants over the next several weeks. [*Id.* at ¶¶ 47, 57, 59]. At one point, Plaintiff recommended hiring an independent auditor to evaluate the number of false reports made to the federal government. [*Id.* at ¶ 48]. Mr. Embry refused. [*Id.*]. After one conversation, Mr. Embry lost his temper with Plaintiff. [*Id.* at ¶ 60]. Shortly after this meeting, wherein Plaintiff again raised his concerns about potential violations of law, Defendants terminated Plaintiff's employment. [*Id.* at ¶ 61]. The individual Defendants, JoEllen Embry, Raymond Embry, and Zachary Travis were decision makers responsible for terminating Plaintiff. [*Id.* at ¶¶ 40-41].

Prior to litigation, Plaintiff discovered that Defendants were failing to respect Embry and Apollo's corporate forms. Mr. Embry, Mr. Travis, and Ms. Embry had formed Embry and Apollo, but created a fictitious entity as a stand-in for both entities member and manager. [*Id.* at ¶¶ 21-23, 31-33]. Defendants also repeatedly comingled corporate funds. [*Id.* at ¶¶ 25, 34-36]. Each entity shares the same officers and directors, which are Mr. Embry and Mr. Travis. [*Id.* at ¶¶ 26, 36].

## II. The Entry of Default Is Proper Pursuant to Fed. R. Civ. P. 55.

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). Once default has been entered against a party, the Court has discretion to enter a default judgment against the defaulted party. *Best Western Int'l v. Universal Hospitality, Inc.*, No. CV–08–91–PHX–DGC, 2008 WL 2003784, at *1 (D. Ariz. May 8, 2008).

In exercising discretion whether to grant or deny a motion for default judgment, the Court may consider the following factors: (1) the possibility of prejudice to plaintiff if a default judgment is not entered; (2) the merits of plaintiff's claim(s); (3) the sufficiency of plaintiff's complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the

Silence Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Here, all the foregoing factors weigh in favor of the Court granting this Motion and entering a default judgment against Defendants.

### 1. Plaintiff Will be Prejudiced if Default Judgment Not Entered.

This *Eitel* factor weighs in favor of Plaintiff if he "will be prejudiced if default judgment is not entered." *Best Western Int'l*, 2008 WL 2003784, at *1. Plaintiff has attempted for almost two years to litigate this case. Unfortunately, Defendants have rendered any attempts to litigate the case impossible due to their refusal to actively participate in the process. [*See* Doc. 45]. As a result, the Court ordered the court clerk to enter default as a sanction. [*See id.*]. Defendants' unwillingness to participate in this litigation renders it impossible to proceed with this litigation absent entering default judgment. The failure to enter default judgment eliminates any recourse for Plaintiff to receive relief for his legal claims. Thus, this factor weighs in favor of granting the Motion for Default Judgment.

### 2. The Merits of the Claims and Sufficiently of the Complaint Support Entry of Default Judgment.

"The second and third *Eitel* factors favor a default judgment where the complaint sufficiently states a claim for relief under the liberal pleading standards of Rule 8." *Best Western Int'l*, 2008 WL 2003784, at *2. As support for his claims, Plaintiff filed a 93 paragraph Complaint alleging two claims: (1) Retaliation in violation of 31 U.S.C. §§ 3729, *et seq*. and (2) unlawful termination in violation of A.R.S. § 23-1501. In the Complaint, Plaintiff shows that Defendants were operating a complex scheme to submit false claims for reimbursement of COVID-19 tests and vaccines from the federal government and receive kickbacks based on those claims. [Doc. 17, at ¶¶ 41, 49, 50, 51, 52, 53, 54, 55]. Plaintiff also outlined Defendants attempts to disregard the various businesses' corporate forms through the comingling and misappropriation of funds for personal use. [*Id.* at ¶¶ 21-23, 25, 31-36]. Plaintiff raised these concerns with Defendants

Silence Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

1 and was terminated in retaliation for "blowing the whistle." [*Id.* at ¶¶ 47, 57, 59]. The FAC sufficiently alleges facts that support these two claims. Thus, the second and third factor support the entry of default judgment.

### 3. The Sum of Money at Issue in the Litigation.

Under this factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d. 1172, 1176 (C.D. Cal. 2002). The FAC alleges that Defendants were engaging in a systematic attempt to defraud the federal government out of funds related to the testing and vaccination for the COVID-19 pandemic, participate in a kickback scheme, and violate patient privacy. [Doc. 17, at ¶¶ 41, 49, 50, 51, 52, 53, 54, 55]. After raising these issues, Plaintiff's employment was terminated. [*Id.* at ¶¶ 47, 57, 59]. Defendants are jointly and severally liable as Plaintiff brough his claims for wrongful termination against all Defendants. The individual Defendants made the decision to terminate Plaintiff. We base our request for damages largely upon the Declaration of Plaintiff, which sets forth the basis for his damages claims and the evidentiary support. Plaintiff incorporates herein by reference his Declaration, enclosed herewith.

The compensatory damages Plaintiff seeks include backpay, interest, attorney fees and costs, and emotional distress. [*Id.* at ¶¶ 93]. Plaintiff diligently applied for comparable positions to the Chief Information Officer position he lost but was not successful. [*See* Declaration of Khanh Nguyen]. Plaintiff disclosed over 1,000 pages of job application communications to Defendants Bates No. NGUYEN000188-002036. *Id.* Plaintiff incurred 30 months in backpay damages from the date of termination to the entry of default. His annual salary was $455,000, yielding a value of $1,137,500.10. *Id.* The False Claims Act (FCA), 31 U.S.C. §§ 3729 - 3733 mandates liquidated double damages for backpay, yielding a value of $2,275,000.20 including backpay and liquidated damages. Per the Plaintiff's Declaration, Plaintiff's attorney fees and costs incurred to date are approximately $95,000. *Id.*

Silence Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

Silence Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

The Declaration sets forth reasonable estimates for emotional distress. Plaintiff's emotional distress is significant. He was devastated by the loss of his job. Plaintiff believed he was doing the right thing in reporting unlawful conduct. After losing his job, he experienced "insomnia, fatigue, difficulty concentrating, anxiety, depression, and loss of appetite…" as well as "feelings of helplessness, anger, and isolation." *Id.* His hardship was compounded by his duty to care for his father in light of a multitude of health conditions including melanoma, kidney cancer, late-stage renal disease, degenerative spinal disease, an unknown gastrointestinal condition causing severe weight-loss, and a recent diagnosis of two additional tumors. *Id.* Khanh has also been a caretaker and financial supporter for his sister who developed terminal cancer. *Id.* Khanh used his life savings and retirement accounts over the past two years to fund his lawsuit, pay medical bills, and support his father and sister. The mental strain associated with taking on such responsibilities has greatly affected his mental and emotional health. By contrast, after using their insurance to pay for counsel, Defendants stopped communicating with their own attorneys and abandoned this lawsuit, leaving Khanh uncertain as to when and how he may obtain relief. It is appropriate to apply a daily cost of at least $500 per day for Plaintiff's emotional distress. 921 days passed from the termination to entry of default, amounting to $460,500 in emotional distress.

Punitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568, 116 S. Ct. 1589, 1595, 134 L. Ed. 2d 809 (1996). The U.S. Supreme Court in *BMW* provided sound jurisprudence for us to apply to determine an appropriate punitive damages award. The Supreme Court considered "the degree of reprehensibility" as the primary criterion for punitive damages. Punitive damages should reflect "the enormity of the offense…" and "trickery and deceit are more reprehensible than negligence." Aggravating factors identified by the Supreme Court include "deliberate false statements, acts of affirmative misconduct, or concealment of evidence of improper motive…" *BMW of N. Am., Inc.*, 116 S. Ct. 1589, 1601.

Acts of affirmative misconduct are present as an aggravating factor. Defendants willfully terminated Plaintiff for engaging in protected whistleblower activities. There were no performance reasons for Plaintiff's discharge. Defendants initially argued, without supporting evidence, that Plaintiff's position was eliminated to reduce expenses. However, Plaintiff's Declaration states, as reflected in his Complaint, that he stated his reasonable belief that Defendants submitted false claims to the U.S. Government for reimbursement of COVID-19 testing and failed to adequately protect protected patient information. Plaintiff further states that he was terminated just after engaging directly in protected activity by reporting suspected unlawful activity to CEO Raymond Embry, as well as the finance team, head of HR, and Chief of Staff. Defendants therefore acted with knowledge of Plaintiff's objection to unlawful activities including fraudulent claims and terminated him in retaliation for reporting his concerns.

The aggravating factor of concealment of evidence of improper motive is also present here. Defendants stopped participating in this lawsuit after their attorneys withdrew in May of 2024. Defense counsel's good cause for withdrawal was due to their inability to "maintain a level of communication with Defendants that would allow counsel to ethically continue the representation." *See* Doc 34. Plaintiff requested Defendants' balance sheets and financial information to support their alleged defense that his termination was motivated by reducing expenses. Defendants did not disclose the net worth of the individual defendants, nor the balance sheets of the corporate defendants. After attempting to resolve discovery disputes without court intervention, Plaintiff filed a Motion to Compel Discovery Responses to which Defendants never responded. Refusing to communicate with counsel is worse than refusing to produce relevant documents—it is a form of concealment of evidence of improper motive and likely also an affirmative act of misconduct.

This Court issued an order requiring the corporate defendants to hire new counsel. The corporate defendants ignored the order and did not hire counsel within the time allotted. These are additional affirmative acts of misconduct and concealment of evidence

of improper motive, more evidence that aggravating factors justify a substantial punitive damages award.

While the Supreme Court has rejected the idea of using "a simple mathematic formula" to determine punitive damages, it has also said that "few awards exceeding a single-digit ratio between punitive and compensatory damages… will satisfy due process." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003).

Here, the compensatory damages are $1,598,000.10, which is for 30 months of backpay and emotional distress. Therefore, a single-digit ratio is fitting. We believe a ratio of 5:1 of total compensatory damages (not including the liquidated double damages penalty), which yields a value of $7,990,000.50 is appropriate. Thus, Plaintiff requests the following:

   a. 30 months backpay: $1,137,500.10 ($37,916.67*30)
   b. Liquidated damages per 1 U.S.C. §§ 3729 - 3733: $1,137,500.10
   c. Emotional Distress $500 per day for 921 days: $460,500
   d. Punitive Damages: $7,990,000.50 (backpay + emotional distress)*5.
   e. Attorney fees: $95,000.
   f. Total: $10,820,500.70 (punitive + (backpay*2) + emotional distress + attorney fees).

**4. There is No Dispute Regarding Material Facts.**

Given the entry of default against Defendant, all well-pleaded facts in the Plaintiff's complaint are taken as true. *TeleVideo Systems*, 826 F.2d at 917-8. Given the foregoing, and the fact that Plaintiff's FAC sufficiently alleged all facts necessary to support the claims alleged therein, there is no legitimate possibility of a dispute regarding material facts.

**5. Defendant's Default Was Not the Result of Excusable Neglect.**

Courts have held that "[t]his factor favors default judgment when the defendant has been properly served or the Plaintiff demonstrates that the defendant is aware of the lawsuit." *Coach Servs., Inc. v. YNM, Inc.*, No. 2:10–CV–02326–JST (PLAx), 2011 WL

1752091, at *4 (C.D. Cal. May 6, 2011). Here, there is no dispute that Defendants were properly served. Defendants filed an answer, then abandoned their defense. Both the Plaintiff's counsel and this Court attempted to reach Defendants but were unsuccessful.

On August 28, 2024, the Court provided Defendants the opportunity to file a statement "indicating whether they wish[ed] to defend the claims" no later than September 13, 2024. [Doc. 45]. Defendants never responded. At this stage, the only conclusion to draw is that Defendants have actively decided to abandon this litigation. Thus, this factor weighs in favor of granting the Motion for Entry of Default Judgment.

### 6. A Decision on the Merits is Not Possible.

While the policy underlying the Federal Rules of Civil Procedure favors decisions on the merits, "this preference, standing alone, is not dispositive." *PepsiCo, Inc.*, 238 F. Supp. 2d. at 1177 (quoting *Kloepping v. Fireman's Fund*, No. C 94-2684 THE, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996)). Defendants' decision to abandon their defense, and this litigation, renders any decision on the merits impossible. *Id.* Thus, this favor weighs in favor of granting the Motion for Entry of Default Judgment.

### III. Conclusion

For the reasons set forth above, Plaintiff respectfully requests that this Court enter a default judgment herein against all Defendants jointly and severally. Plaintiff further requests this Court award damages as described herein and within the Declaration of Khanh Nguyen submitted with this Motion.

Alternatively, we request this Court hold an evidentiary hearing to determine the amount of damages pursuant to Fed. R. Civ. P. 55(b)(2)(B).

Plaintiff also requests that the Court allow him to file an application for attorney's fees following the conclusion of that hearing pursuant to Local Rule 54.2.

DATED this this 6th day of December 2024.

Silence Law Group
3241 E. Shea Blvd Ste 1 # 434
Phoenix, AZ 85028

**Silence Law Group**

*/S/ Jeffrey Silence*
Jeffrey Silence

*Attorney for Plaintiff Khanh Nguyen*

***Certificate of Service***

I hereby certify that on this 6th day of December, 2024, I filed this Motion through the Court's electronic filing system, which provided notice to Defendants at the following addresses:

Raymond Embry
Mailing address unknown
ray.embry@gmail.com

Zachary Travis
Mailing address unknown
travisz2010@yahoo.com

JoEllen Embry
7896 S. Dateland Dr.
Tempe, AZ 85284
joellen.embry@gmail.com

Apollo Healthcare & Diagnostics LLC
3370 N Hayden Rd, Ste 123215
Scottsdale, AZ 85251

Embry Health of Arizona LLC
3800 N Central Ave, Ste 460
Phoenix, AZ 85012


 */s/ Jeffrey Silence*