**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Khanh Nguyen, | No. CV-23-00422-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Embry Health of Arizona LLC, et al., | |
| Defendants. | |

Plaintiff Khanh Nguyen alleges he was unlawfully terminated for whistleblowing in violation of federal and Arizona law. Nguyen filed this suit against his former employers who initially appeared and defended against the claims. Later, all defendants stopped participating and their defaults were entered. Nguyen now seeks a default judgment of approximately ten million dollars. Default judgment is appropriate but for an amount less than Nguyen seeks.

The court must consider seven factors when deciding whether to enter default judgment. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The seven factors are:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.*

### 1. Possible Prejudice to Nguyen

The first factor regarding the prejudice to Nguyen weighs in favor of default judgment because if "default judgment is not granted, [Nguyen] will likely be without other recourse for recovery." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

### 2. Merits of the Claims and Sufficiency of the Complaint

The second and third factors require assessing the merits of Nguyen's claims and the sufficiency of his complaint. These factors "are often analyzed together and require courts to consider whether a plaintiff has state[d] a claim on which [he] may recover." *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019). Based on the allegations in the complaint, Nguyen has stated strong claims for relief.

Defendants Embry Health of Arizona, LLC ("Embry") and Apollo Healthcare & Diagnostics, LLC ("Apollo") are healthcare companies "primarily focused on providing COVID-19 testing and vaccines." (Doc. 17 at 3.) Defendant Raymond Embry is a managing member and the Chief Executive Officer of Embry and Apollo, defendant Zachary Travis is a managing member of Embry and Apollo, and defendant JoEllen Embry is a managing member of Embry. (Doc. 17 at 2.) There was "a unity of interest and ownership among [Embry and Apollo] such that the separate identifies of each" do not exist and the two entities are "a single enterprise." (Doc. 17 at 4.) In addition, Embry and Apollo are the alter egos of Raymond Embry and Zachary Travis.

In February 2022, Nguyen began working for Embry and Apollo as Chief Information Officer. Nguyen's annual salary was $350,000 with an annual bonus of $105,000. Not long after he started, Nguyen made multiple reports to Raymond Embry, Zachary Travis, and JoEllen Embry that Embry and Apollo were engaged in illegal conduct, including that the entities were violating federal and Arizona anti-kickback statutes, 42 U.S.C. § 1320a-7b, A.R.S. § 13-3713. On March 14, 2022, Nguyen made another report to Raymond Embry and was fired minutes later. (Doc. 17 at 9.) Nguyen filed

this suit alleging retaliation under the False Claims Act, 31 U.S.C. § 3730, and unlawful termination in violation of A.R.S. § 23-1501.

A retaliation claim under the False Claims Act requires the plaintiff "demonstrate that: (1) he engaged in activity protected under the statute; (2) the employer knew the plaintiff engaged in a protected activity; and (3) the employer discriminated against the plaintiff because he . . . engaged in protected activity." *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 907 (9th Cir. 2017) (simplified). Nguyen has alleged sufficient facts for each of these elements.

"[A]n employee engages in protected activity where (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government." *Id.* (simplified). Nguyen reported he believed Embry and Apollo were engaged in "excessive testing" of its employees "solely to increase revenues . . . at the expense of the federal government by submitting claims for the testing to the federal government's Health Resources and Services Administration." (Doc. 17 at 5.) Embry then certified to the federal government that Embry "was in full compliance with all federal laws and regulations." (Doc. 17 at 7.) That certification was false because the testing of employees was not medically necessary. (Doc. 17 at 7.) In reporting this behavior, Nguyen had a good faith belief that Embry and Apollo were committing fraud against the government so the first element of his retaliation claim is satisfied.

Nguyen repeatedly reported his concerns to Raymond Embry, Zachary Travis, and JoEllen Embry. (Doc. 17 at 7.) Those reports satisfy the second element that Nguyen's employer knew of his reports. Nguyen's final report was made directly to Raymond Embry who "lost his temper." (Doc. 17 at 8.) Ten minutes later, Nguyen was fired. That plausibly establishes the third element that Nguyen was fired because of his reports. Nguyen has stated a claim for retaliation under the False Claims Act.

Arizona law recognizes a claim for unlawful termination when an employee is fired "for reporting violations of Arizona law to the employer's management or other

investigative authority." *Galati v. Am. W. Airlines, Inc.*, 69 P.3d 1011, 1013 (Ariz. Ct. App. 2003). Nguyen alleges he "blew the whistle" regarding numerous violations of Arizona law, including laws prohibiting fraud in federal healthcare programs, laws against kickbacks, and laws requiring healthcare data security. (Doc. 17 at 11.) Nguyen was fired shortly after making his reports. Nguyen has stated an unlawful termination claim.

Accepting the complaint's allegations as true, Nguyen has well-founded claims for retaliation under the False Claims Act and unlawful termination under Arizona law. The second and third default judgment factors weigh in favor of entering default judgment.

### 3. Amount in Controversy

The fourth default judgment factor "requires that the court assess whether the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010). When a large sum is at stake, this factor may weigh against default judgment. *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1212 (W.D. Wash. 2014).

Here, Nguyen is seeking an award of lost wages, liquidated damages, emotional distress damages, and punitive damages for a total award of $10,725,500.70.[1] (Doc. 56 at 8.) That amount is calculated as:

- $1,137,500.10 (backpay for 30 months, measured from the date of Nguyen's termination to the date the clerk entered defendants' defaults);
- $1,137,500.10 (liquidated damages equal to his backpay);
- $460,500 (emotional distress at $500 per day for 921 days);
- $7,990,000.50 (punitive damages calculated as five times the total of backpay plus emotional distress).

All types of damages Nguyen seeks are available under either the False Claims Act or Arizona law. *See* 31 U.S.C. § 3730(h)(2) (allowing recovery of "2 times back pay" and special damages); *Seballos v. Freeport-McMoRan, Inc.*, No. 1 CA-CV 22-0079, 2023 WL 5624716, at *7 (Ariz. Ct. App. Aug. 31, 2023) (recognizing punitive damages are

---

[1] Nguyen's motion identifies a slightly different total amount because he includes an estimated amount for attorneys' fees.

permissible "for wrongful discharge in violation of public policy"). The total amount Nguyen seeks is large, but that amount is tied directly to Nguyen's significant annual compensation. The recovery sought is roughly proportional to the harm Nguyen seeks. Given the sizeable amount Nguyen seeks however, this factor weighs slightly against entering default judgment.

### 4. Dispute Over Material Facts

The fifth factor is whether there are any disputes over material facts. Defendants' decision to stop participating means there is no indication of such disputes. This factor weighs in favor of default judgment.

### 5. Excusable Neglect

The sixth factor looks to whether defendants' behavior might be due to excusable neglect. Defendants were properly served, retained counsel, and participated for a limited time. Defendants then stopped cooperating with their counsel and counsel withdrew. After counsel withdrew, the court attempted to send notices directly to defendants and warn them of the risk of default. Defendants did not update their mailing addresses. It has now been over eight months since the court first attempted to warn defendants they were at risk of default, but no defendant has appeared. This behavior establishes defendants have intentionally chosen to ignore this suit and their behavior is not due to excusable neglect. *See Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (defendants' failure to respond to complaint could not "be attributable to excusable neglect" because "[a]ll were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion."). This factor supports entry of default judgment.

### 6. Policy Favoring Decisions on the Merits

The seventh factor recognizes a preference for resolving matters on their merits. This factor, as always, weighs against entry of default judgment. "However, the mere existence of Fed.R.Civ.P. 55(b) indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (quotation marks and citation omitted).

Defendants' decision to stop participating indicates it would be "impractical, if not impossible," to reach the merits. *Id.* Thus, this factor weighs against default judgment but is not sufficient to preclude its entry.

### 7. Default Judgment is Merited

Almost all of the factors support entry of default judgment and in the circumstances of this case, default judgment is appropriate and therefore granted. The only remaining issue is the amount of damages.

### 8. Damages

It is Nguyen's burden to prove the amount of his damages. *Blumenthal Distrib., Inc. v. Comoch Inc.*, 652 F. Supp. 3d 1117, 1131 (C.D. Cal. 2023). Nguyen filed an affidavit stating that after he was fired, he was unable to obtain replacement employment. (Doc. 56-1 at 3.) Thirty months passed between Nguyen's termination and the clerk's entry of default. Nguyen is entitled to recover his unpaid salary for those months. The False Claims Act provides Nguyen is entitled "2 times backpay." 31 U.S.C. § 3730(h)(2). Nguyen is therefore entitled to at least $2,275,000.20.

Nguyen seeks an additional $460,500 in emotional distress damages, calculated as $500 per day for 921 days (*i.e.*, the period between his termination and entry of defendants' defaults). Nguyen describes the loss of his job as "a devastating experience." In the last few years members of Nguyen's immediate family have experienced serious health complications and "[t]he financial toll" of caring for those family members without any employment income has been "emotionally, mentally, and physically taxing." (Doc. 56-1 at 4.) As a result of defendants' actions, Nguyen suffers from "insomnia, fatigue, difficulty concentrating, anxiety, depression, and loss of appetite." (Doc. 56-1 at 4.)

"Emotional distress damages are warranted in whistleblower cases." *United States ex rel. Macias v. Pac. Health Corp.*, No. CV1200960RSWLJPR, 2016 WL 8722639, at *12 (C.D. Cal. Oct. 7, 2016). But the amount sought by Nguyen is excessive and more than has been awarded in other retaliation cases. In one case the plaintiff alleged "she became withdrawn from friends and family, suffered from anxiety and depression, had

1 nightmares," and had to relocate to a different state. *Id.* That plaintiff requested $500,000
2 in emotional distress damages but the court awarded only $35,000. *Id.* In explaining that
3 award, the court cited other retaliation cases involving "more egregious facts" that had
4 justified much larger awards. *Id.* In one of the other cases, the plaintiff received $200,000
5 after she "was subject to ostracism, a year-long depression . . . upheaval in her life and
6 threats of physical injury." *Id.* (citing *Neal v. Honeywell Inc.*, 191 F.3d 827 (7th Cir. 1999)).
7 In another case, the plaintiff received $300,000 after he "suffered from sleepless nights and
8 had severe financial difficulty in supporting his family." *Id.* (citing *Townsend v. Bayer
9 Corp.*, 774 F.3d 446 (8th Cir. 2014)).

10 Nguyen worked for defendants for a little over one month and was not subjected to
11 ostracism or harassment during that time. Nguyen has not been threatened with physical
12 harm. And Nguyen has not been required to relocate to a different state. Based on these
13 facts, an award of approximately $100 per day is appropriate, leading to a total award of
14 $10,000 in emotional distress damages.

15 Finally, Nguyen seeks approximately $8 million in punitive damages. Nguyen does
16 not cite any authority establishing punitive damages are permissible under the False Claims
17 Act. *See Grant on behalf of United States v. Zorn*, 107 F.4th 782, 796 (8th Cir. 2024)
18 (affirming denial of punitive damages in False Claims Act case). But punitive damages are
19 available under Nguyen's state-law claim, so the court looks to Arizona law regarding
20 when punitive damages are appropriate.

21 Arizona law allows for an award of punitive damages when "the defendant's actions
22 either (1) intended to cause harm, (2) were motivated by spite, or (3) were outrageous,
23 creating a substantial risk of tremendous harm to others." *Swift Transportation Co. of
24 Arizona L.L.C. v. Carman in & for Cnty. of Yavapai*, 515 P.3d 685, 692 (Ariz. 2022).
25 Requiring evidence of one of these options is "intended to limit punitive damages awards
26 only to case in which they further the objectives of punishment and deterrence." *Id.*
27 Punitive damages therefore "are awarded only in the most egregious of cases." *Medasys
28 Acquisition Corp. v. SDMS, P.C.*, 55 P.3d 763, 767 (Ariz. 2002) (simplified).

Defendants' behavior in this case was unlawful but there is insufficient evidence their behavior places this case among the most egregious. Rather, this case is a straightforward case of an employer engaged in unlawful behavior which then immediately and unlawfully terminated an employee who complained of the employer's conduct. Nguyen had only worked at that employer for a little over one month and there are no facts showing his working environment during that month was otherwise difficult or harmful. Punitive damages are not appropriate.

**9. Entry of Judgment**

Nguyen is entitled to $2,275,000.20 as doubled backpay and $10,000 in emotional distress damages for a total of $2,285,000. Nguyen is entitled to prejudgment interest on his backpay award, but not on the doubled backpay award. 31 U.S.C. § 3730(h)(2); *see also Erickson v. Biogen, Inc.*, No. C18-1029-JCC, 2020 WL 885743, at *6 (W.D. Wash. Feb. 24, 2020) (declining to award prejudgment interest on the doubled backpay award). Nguyen must file a proposed form of order reflecting the appropriate amount of prejudgment interest. Nguyen may apply for an award of attorneys' fees consistent with the deadline and procedures in Local Rule 54.2.

Accordingly,

**IT IS ORDERED** the Motion for Default Judgment (Doc. 56) is **GRANTED**.

**IT IS FURTHER ORDERED** within **five days** of this order plaintiff shall file a proposed form of judgment that includes the appropriate amount of prejudgment interest.

**IT IS FURTHER ORDERED** plaintiff may apply for an award of attorney's fees after judgment is entered.

Dated this 8th day of May, 2025.

**Honorable Krissa M. Lanham**
**United States District Judge**